# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-DR-01077-SCT

*LARRY MATTHEW PUCKETT*

*v.*

*STATE OF MISSISSIPPI*

## ON MOTION FOR CLARIFICATION

| | |
|---|---|
| ATTORNEYS FOR APPELLANT: | MISSISSIPPI OFFICE OF CAPITAL POST-CONVICTION COUNSEL BY:  TERRI L. MARROQUIN ROBERT RYAN |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY:  MARVIN L. WHITE, JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | MOTIONS GRANTED- 12/12/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     The motion for clarification is granted.  The original opinion in this case is withdrawn, and this opinion is substituted therefor.

¶2.     Larry Matthew Puckett, convicted of capital murder and sentenced to death,  has not filed his application for leave to seek post-conviction relief.  This matter is before the Court en banc on the Motion to Reconsider Extension of Time, Motion to Apply Statute of Limitations Established by Miss. Code. Ann. § 99-39-5(2) to Petitioner's Post-Conviction Petition, and Motion to Stay Filing Deadline, filed on Puckett's behalf by Robert Ryan and

Terri Marroquin of the Mississippi Office of Capital Post-Conviction Counsel. The State has filed no response or objection to these motions.

¶3. Puckett was convicted and sentenced in 1996. On direct appeal, this Court remanded the case for the limited purpose of conducting a *Batson* hearing. *Puckett v. State*, 737 So.2d 322 (Miss. 1999). Following remand, the conviction and sentence were affirmed. *Puckett v. State*, 788 So.2d 752 (Miss. 2001). Puckett's motion for rehearing was denied by this Court on June 28, 2001. This Court's mandate issued on July 19, 2001. Puckett filed a petition for writ of certiorari on November 13, 2001, in the United States Supreme Court (U.S. Sup. Ct. No. 01-7293) but no decision has yet been rendered. Puckett is now endeavoring to present post-conviction issues.

## THE STATUTE OF LIMITATIONS

¶4. To address the issues raised, the Court must consider the proper construction of the recently amended statute of limitations for filing applications for leave to seek post-conviction relief in death penalty cases, and must apply that statute to the facts of this case. Miss. Code Ann. § 99-39-5(2) (Supp. 2002) was amended effective July 1, 2000, to provide that a motion for post-conviction relief in capital cases is to be "filed within one year after conviction."[1] This amendment which was adopted as part of a package of legislation which created the Office of Capital Post-Conviction Counsel and established new procedures for

---

[1] In his Motion to Apply the Statute of Limitations Established by Miss. Code § 99-39-5(2) to Petitioner's Post-Conviction Petition, Puckett argues that the statutory limit rather that the 180 day provision of M.R.A.P. 22 should control as the deadline for filing. Although the rule established a presumptive time table for proceedings, one which attorneys must follow in the absence of order of the Court, it does not constitute a limitation cutting off the petitioner's ultimate right to file within the one-year limitation set by statute.

post-conviction proceedings in cases where the petitioner is under a sentence of death. Recognizing that death eligible inmates are, under these statutes and under *Jackson v. State,* 732 So. 2d 187 (Miss. 1999), assured competent counsel, the Legislature found it appropriate to limit the time for filing such applications to one year, as opposed to three years allowed in non-death eligible cases where counsel is not provided.

¶5.     The first question to be decided is when the statute of limitations begins to run. The phrase "filed within one year after conviction," requires construction. The Court has previously recognized that the Legislature holds the prerogative of placing reasonable time limitations on the filing of post-conviction applications. *Cole v. State*, 608 So. 2d 1313, 1318 (Miss. 1992). "The issue here is not the power of the legislature to provide such limitations, but the interpretation of statutes and court rules within the framework of a legislative act which impacts on the exercise of constitutional rights." *Sykes v. State*, 757 So. 2d 997, 1000 (Miss. 2000).

¶6.     To hold that conviction, as used in this statute, means the entry of the judgment of the trial court, would not recognize the statutory and constitutional requirements that the Supreme Court review all death penalty cases. In a death penalty context, a conviction is final only when the mandatory state appellate review is complete, *i.e.*, when this Court's mandate on appeal issues.

¶7.     There are two decisions of this Court which touch on the subject and both offer differing perspectives. One is a majority opinion, the other a plurality. Both of theses opinions involved calculation of the running of the three-year statute of limitations set forth

prior to the statute's amendment in 2000. In one case, this Court unanimously found that the three-year limitations period ran from the date on which this Court denied the defendant's motion for rehearing in his direct appeal. *Lockett v. State*, 656 So.2d 68, 71 (Miss. 1995). In *Lockett* this Court held that the adage of "better late than never" did not apply and that a motion for post-conviction relief was to be filed within three years after rehearing of his direct appeal was affirmed *by this Court*. *Id* at 71. Thus, *Lockett* is controlling caselaw of this Court.

¶8. In a subsequent case, *Booker v. State*, 699 So.2d 132 (Miss. 1997), a plurality of this Court (Banks, J., with three justices concurring and one justice concurring in the result only; four justices dissenting) interpreted the former three-year statute of limitations to run from the date on which the United States Supreme Court denied Booker's motion for rehearing on his petition for writ of certiorari from his direct appeal of his sentence. *Id.* at 134. A strong dissent (Smith, J., joined by Lee, C.J., Roberts and Mills, JJ.) argued that a challenge to the conviction itself was required to have been made within three years of the entry of the underlying guilty plea.

¶9. The *Booker* and *Lockett* decisions are not compatible in their selection of dates from which the limitations period is to run. *Booker* is a plurality decision, and this Court has previously held that "normally a majority vote of all sitting judges is required to create precedent" and that a "plurality vote does not create a binding result." *Churchill v. Pearl River Basin Dev. Dist.*, 619 So.2d 900, 904-05 (Miss.1993)(rejecting reliance on a four-vote plurality). This has been applied in criminal cases as well. *Carr v. State*, 655 So.2d

4

824, 857 (Miss. 1995) (rejecting reliance on a three-vote plurality); **Conner v. State**, 632 So.2d 1239, 1265 (Miss. 1993)(same). Thus, we hold that **Booker** is not binding authority and has no precedential value as a plurality opinion.

¶10. Under such a construction, the time period for filing Puckett's application for post-conviction relief expired on July 19, 2002. However, the special facts of this case require that we determine whether the statute has been tolled, and, if so, for what period.

## TOLLING OF THE STATUTE

¶11. While the Court is not at liberty to extend or modify statutory limitations, when a party is prohibited from exercising his right to proceed by circumstances which are clearly beyond his control and rise to such a dimension as to implicate due process and fundamental fairness, the Court may and should toll the limitations for the period of the impairment. Application of this limited equitable rule requires recognition that "state post-conviction efforts, though collateral, have become part of the death penalty appeal process at the state level." **Jackson**, 732 So. 2d at 191. An indigent inmate under a sentence of death is entirely dependant upon state-appointed counsel to pursue his post-conviction efforts.

¶12. Our sister state of Tennessee has recently addressed the equitable tolling of the statute of limitations in **Williams v. State**, 44 S.W.3d 464 (Tenn. 2001), under similar circumstances. There, Williams urged that the limitations for his post-conviction filing should be tolled due to his attorney's abandonment of his case without informing Williams. Distinguishing a judicial extension or alteration of the legislative act from equitable tolling

5

for due process purposes, the Court remanded for a factual determination in the trial court, saying:

> We emphasize that under no circumstances are we allowing a petitioner to file an *untimely* application for permission to appeal with the belief that the one-year statute conviction would commence upon this Court's dismissal of that untimely application. As the dissent aptly states, "filing an untimely application for permission to appeal to this Court does not constitute 'an appeal' as that term is used in Tennessee Code Annotated § 40-30-202(a) and therefore does not delay commencement of the one-year post-conviction statute of limitations. Indeed, in this case, the statute of limitations began to run . . . when the Court of Criminal Appeals affirmed Williams's conviction. The sole inquiry here, however, is whether this limitation period is tolled because of due process concerns surrounding possible attorney misrepresentation. . . . [The statute of limitations] gives defendants one year to file their petitions, and we are simply remanding the case to the trial court for an evidentiary hearing to determine (1) whether due process tolled the statute of limitations so as to give the appellee a reasonable opportunity after the expiration of the limitations period to present his claim in a meaningful time and manner; and (2) if so, whether the appellee's filing of the post-conviction petition [after the statutory period had run] was within the reasonable opportunity afforded by the due process tolling. To summarily terminate his claim without further inquiry would be an "abridgement of both direct and post-conviction avenues of appeal–without ever reaching the merits of the appell[ee's] case–[and] would be patently unfair." *Crittenden v. State* 978 S.W. 2d 929 (Tenn. 1998).
>
> . . . . In conclusion, the 1995 Post-Conviction Procedure Act clearly requires that post-conviction claims be filed in a timely manner. Although we agree that Williams filed his petition beyond the statutory deadline, due process considerations may have tolled the limitations period. Hence, the statute cannot be strictly applied without further inquiry, to deny him a reasonable opportunity to seek post-conviction relief.

*Williams*, 44 S.W.3d at 471. *See also Steele v. Kehoe*, 747 So. 2d 931 (Fla. 1999) (affirming the district court of appeals and saying that due process entitles a defendant to belatedly file a post-conviction claim if his efforts were frustrated by his counsel's misleading conduct).

¶13. Equitable tolling of the statute of limitations in post-conviction proceedings is likewise recognized in the federal system. *Dunlap v. United States*, 250 F.3d 1001, 1006 (6th Cir. 2001). The doctrine should only be applied in rare and exceptional circumstances. *Turner v. Johnson*, 177 F.3d 390, 391-92 (5th Cir. 1999). The doctrine may be applied when a movant files in untimely fashion due to extraordinary circumstances which are both beyond his control and unavoidable even in the exercise of due diligence. *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999). A showing of excusable neglect is insufficient, and a petitioner must show that he was prevented from asserting his right to relief. *Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999).

¶14. Puckett brings to this Court's attention the facts that indicate without doubt that he has been prevented from filing his application through no fault or neglect on his part. On February 9, 2001, the Office of Capital Post-Conviction Counsel contracted with Steve Presson of Norman, Oklahoma, to represent Puckett. Then, by order dated October 31, 2001, the Circuit Court of Forrest County declared Puckett to be indigent and further found that Steve Presson of Oklahoma should be appointed as Puckett's post-conviction counsel, if funds were available to pay him, and that "in the event that such funds do not become available, then an attorney from the Office of Capital Post-Conviction Counsel should be appointed as post-conviction counsel for Mr. Puckett effective December 4, 2001." Funds were determined to be unavailable, and C. Jackson Williams, then director of the Office of Capital Post-Conviction Counsel, was substituted as counsel for Puckett on December 7, 2001. Williams thereafter resigned as director of the Office of Capital Post-Conviction

7

Counsel on January 2, 2002. The new director, Robert Ryan, and Terri L. Marroquin filed appearance forms with the Clerk of this Court on February 22, 2002.

¶15. It appears that in the interim, Presson had obtained important files and documents including trial counsel's files, police reports and discovery materials and removed them to his offices in Oklahoma. The Office of Capital Post-Conviction Counsel began to attempt to recover these materials in order to proceed on Puckett's behalf. Presson however ignored requests to turn over the files, and Ryan was ultimately forced to file a complaint with the Oklahoma Bar Association seeking their return. On June 13, 2002, this Court entered an order directing Presson to return all of Puckett's files. Presson eventually delivered three boxes of material to the Office of Capital Post-Conviction Counsel on July 8, 2002. The record before us demonstrates that during the period from late December 2001 the Office of Capital Post-Conviction Counsel conscientiously tried to retrieve those documents and to obtain duplicates from other sources. Counsel for Puckett now seeks relief from this Court requesting an extension of time in which to file the application for leave to seek post-conviction relief.

¶16. In the present case, it cannot be said that Puckett has slept on his rights or that he seeks relief because of mere excusable neglect. Due to circumstances completely beyond his control, Puckett has been unable to timely file an application for leave to seek post-conviction relief within the one-year time frame. His former attorney's actions have affirmatively frustrated his efforts through new counsel to pursue the post-conviction process. Pursuant to this Court's decision in *Jackson v. State*, 732 So.2d 187 (Miss. 1999),

Puckett was clearly entitled to appointed competent and conscientious counsel to assist him with his pursuit of post-conviction relief. Although his direct appeal was affirmed on June 28, 2001, with the mandate issuing on July 19, 2001, the trial court did not hold a hearing until October 23 of that year, to determine Puckett's indigence and desire to have counsel. The trial court's order reflects that the Office of Capital Post-Conviction Counsel lacked the funding to pay Presson to represent Puckett. Attachments to Puckett's motions for time include copies of e-mail communication between that Office and Presson which indicate that Presson had ceased to work on the matter, failed to return vital documents, and abandoned communication with the Office. While Presson could not be expected to represent Puckett without compensation, once he entered on the task he was bound by professional obligation to do no harm. His failure to return the documents, for whatever reason, fell below professional standards and frustrated Puckett's efforts to seek relief. To punish Puckett for these circumstances would deprive him of minimal due process and a fair opportunity to be heard. The statute was tolled by these events, and the Court is bound to grant Puckett relief.

## CONCLUSION

¶17.  While it is impossible to determine at what point the circumstances here became so serious as to toll the statute of limitations, equitable relief is due, and the Court will grant Puckett an additional 180 days after the date of this decision in which to complete and file his application for leave to seek post-conviction relief. It should be said that the equities are based on the unique facts of this case. While other jurisdictions have applied the doctrine of equitable tolling to non-capital cases, we do not do so today; the fact that Puckett is

9

under a sentence of death and subject to a shortened one year statute of limitations weighs heavily in this decision. Further, we emphasize that we do not base this action on mere excusable neglect or ignorance by Puckett or his counsel, but upon our recognition that the actions of former counsel were such as to rise to the deprivation of fundamental due process.

¶18. The Motion to Reconsider Extension of Time, the Motion to Apply Statute of Limitations and the Motion to Stay Filing Deadline are granted. Puckett shall file his application for leave to seek post-conviction relief within 180 days after the date of this decision.

¶19. **MOTIONS GRANTED.**

**WALLER, COBB, DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION. PITTMAN, C.J., NOT PARTICIPATING.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶20. The analysis used by the majority to disregard this Court's holding in *Booker v. State*, 699 So.2d 132 (Miss. 1997), and its adoption of the doctrine of equitable tolling are fatally flawed. For these reasons, I dissent.

¶21. The majority disregards this Court's holding in *Booker* by asserting that the decision is only a plurality decision which does not create precedent or a binding result. In my view, *Booker* is not a plurality decision, but a majority decision. A plurality vote is an opinion with less than five votes. In *Booker*, Justice Banks wrote the majority which was joined by Presiding Justice Prather, Presiding Justice Sullivan, and then Justice (now Chief Justice Pittman). I concurred in result only. Four (4) Justices dissented, then Justice (now Presiding

10

Justice) Smith, Chief Justice Dan Lee, Justice Roberts, and Justice Mills. A "concurrence in result only" is a vote for the majority opinion, however signifies that there may be some points and/or statements in the majority which the Justice disagrees. "Concurring in result only" still means one is agreeing with the majority's holding and outcome. By concurring in result only, I essentially acquiesced in Justice Banks's opinion. Since five Justices concurred in the *Booker* opinion, it is indeed a majority opinion which did establish precedent. Contrary to the majority's findings, *Booker* did create a binding result. The majority's disregard for the *Booker* holding is fatally misguided. As found in *Booker*, the statute of limitations for post-conviction relief does not begin to run "until the conclusion of [the] direct appeal, which [does] not occur until the denial of rehearing of [a] petition for certiorari in the United States Supreme Court from this Court's decision [on] direct appeal." 699 So.2d at 134. That is the law, and that is what this Court should have found here.

¶22. Furthermore, the majority's adoption of the doctrine of equitable tolling as it applies to capital cases is fatally flawed. Equity should not be used to create a new defense and appeal mechanism for defendants in criminal cases who claim the delay of their post-conviction appeal was due to no fault of their own and under extenuating circumstances. By adopting the doctrine of equitable tolling, the majority is opening a flood gate of appeals and fact intensive review. The majority's holding creates a free-for-all standard when it comes to criminal appeals. Is equity now going to be applicable to all criminal convictions and proceedings?

¶23. For these reasons, I dissent.